## WAKEFIELD v. HOUSEL.

(Circuit Court of Appeals, Eighth Circuit. April 7, 1923.)

No. 6080.

1. Bankruptcy ⬅229—Proceedings held not to authorize sentence for criminal contempt.

Proceeding against a bankrupt for contempt *held* not instituted and tried as for criminal contempt and not to authorize a sentence to imprisonment for criminal contempt, where it was entitled and conducted throughout as a part of the bankruptcy proceeding, was instituted before a referee by petition of the trustee, and conducted by his counsel, who introduced and examined respondent as a witness, and also introduced his testimony on his general examination under Bankruptcy Act, §§ 7 (9), being Comp. St. § 9591, which expressly provides that such testimony shall not be offered against him in any criminal proceeding, and where the court adjudged respondent guilty of contempt solely on the evidence taken before the referee.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Bankruptcy ⚖➠242(2)—Proceeding for criminal contempt Is "criminal proceeding."**

A proceeding to punish for criminal contempt is a "criminal proceeding," within the meaning of Bankruptcy Act, § 7 (9), being Comp. St. § 9591, providing that no testimony given by bankrupt in his examination is admissible against him in a criminal proceeding.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Criminal Proceeding.]

**3. Bankruptcy ⚖➠229—Authority of referee to certify for contempt limited to acts enumerated in statute.**

The authority of a referee to issue a certificate of contempt to the judge, under Bankrupty Act, § 41 (Comp. St. § 9625), is limited to the acts of contempt enumerated in that section.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Proceeding for contempt by B. C. Housel, trustee in bankruptcy, against S. L. Wakefield. From a judgment imposing a prison sentence for contempt, respondent brings error. Reversed.

Pearson & Baird, of Oklahoma City, Okl., for plaintiff in error.

Wilson, Tomerlin & Threlkeld of Oklahoma City, Okl., for defendant in error.

Before SANBORN and KENYON, Circuit Judges, and SYMES, District Judge.

SANBORN, Circuit Judge. On January 23, 1922, the District Court below found the plaintiff in error, S. L. Wakefield, "to be in contempt of this court as set forth in the certificate of facts of the said referee," and ordered and adjudged "that he be committed by the United States marshal to the county jail of Oklahoma county, Oklahoma, for a period of six months from this date." Wakefield sued out this writ of error to review the judgment against him, and has assigned many alleged errors in his trial and conviction, the chief of which is that he was thereby adjudged guilty and sentenced for a criminal contempt without any "proceeding instituted and tried as for a criminal contempt" declared indispensable to a lawful judgment of this kind by the Supreme Court in Gompers v. Bucks Stove & Range Company, 221 U. S. 418, 444, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874.

It is conceded by counsel for both parties that the punishment adjudged was wholly punitive and for a criminal contempt, but counsel for Wakefield insists that the proceedings upon which the judgment is founded were civil while opposing counsel insist that they were criminal in their nature. Those proceedings were these:

On August 13, 1921, after Butler-Williams-Wakefield Motor Company, a copartnership composed of E. M. Butler, R. L. Williams, and S. L. Wakefield, and E. M. Butler, R. L. Williams, and S. L. Wakefield as individuals, had been adjudged bankrupts on August 20, 1920, B. C. Housel, the trustee in bankruptcy, filed in that proceeding a petition wherein he averred that on July 1, 1920, Wakefield left Oklahoma City, his residence, with a Cole-8 automobile worth about $2,000 and

about $3,300 of his money; that in his examination in open court in July, 1921, which was had under section 7 (9) of the Bankruptcy Act (Comp. St. § 9591), he had testified that he had this property in his possession after he received notice of the filing of the petition in bankruptcy, and that he had spent the entire amount thereof, and had sold his automobile and turned the proceeds over to his attorney; that he had also testified that he had no means with which he could restore the money or the proceeds of the automobile, and that thereby "the said bankrupt had been guilty of contempt of this court, in like manner as violating an injunctional order of the court"; and he prayed for an order upon Wakefield to show cause why the referee in bankruptcy should not certify to the court the acts alleged "and the finding of the said referee that the said bankrupt is in contempt, and recommending that the said bankrupt be punished for contempt." Thereupon the referee issued an order to Wakefield to show cause before him at a time certain why the referee should not make a finding to the effect that Wakefield had been guilty of contempt of court, and recommend to the District Court that he be punished for contempt and certify such finding and recommendation to the court. In response to this order Wakefield appeared before the referee and demurred to the petition, on the ground that it did not set forth facts sufficient to warrant the relief sought. The referee overruled the demurrer. Wakefield answered that the $3,300 and the automobile were his individual property, which was not derived from the partnership; that he went to Denver with them about July 1, 1920; that during that month he saw a statement in a newspaper that a petition in bankruptcy had been filed against his firm, but that he had no notice that the petition had been filed against him as an individual, and had no reason to believe that he had been held liable or accountable for any of his individual property in the bankruptcy proceeding; and that he never intentionally converted any part of the property to his own use in contravention of the bankruptcy law or proceeding.

On August 31, 1921, a hearing was had on this petition and answer before the referee, at which parts of the testimony of Wakefield at his examination in the bankruptcy proceeding under section 7 (9) of the Bankruptcy Act, which provides that no such "testimony given by him shall be offered in evidence against him in any criminal proceeding," were introduced in evidence by the trustee, and Wakefield was also called, sworn, and examined as a witness by and for the trustee. After this hearing, the referee, pursuant to the petition, issued a certificate to the effect that Wakefield was guilty of contempt of court, attached to it the petition for the certificate, his citation to Wakefield to appear before him, Wakefield's demurrer and answer, a general order to the defendants in the bankruptcy proceeding to file schedules and to preserve their property, which the referee had made at the time of the adjudication in bankruptcy in August, 1920, and a transcript of the testimony taken before the referee on the petition for his certificate of contempt. After these things had been done, the trustee filed a petition in the bankruptcy proceeding, in which he alleged the same acts of Wakefield averred in his former petition to the referee for the latter's certificate of contempt, and also set forth the proceedings

on that petition, and he prayed for an order on Wakefield to show cause why he should not be punished for contempt. The court issued such an order; Wakefield demurred to the petition; no ruling was made upon that demurrer. Wakefield answered the petition, to the effect that he left Oklahoma City about July 2, 1920, when he had every reason to believe and did believe that the copartnership was solvent; that he learned that a petition in bankruptcy had been filed against him by reading a notice of it in a daily newspaper which he purchased in Denver, Colo., in July, 1920; that the notice did not indicate that he was individually charged with bankruptcy; and that he had never intentionally converted or diverted any property to his own use in contravention of the bankruptcy law. Upon this petition and answer, the certificate of contempt issued by the referee, and the evidence upon the hearing before the latter upon the petition for that certificate, and without other substantial evidence, Wakefield was adjudged guilty of a criminal contempt and sentenced to six months in jail.

Definitions of and the distinctions between civil contempt and criminal contempt may be found in the opinions in Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 441, 443, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, In re Nevitt, 117 Fed. 448, 458, 54 C. C. A. 622, and Bessette v. W. B. Conkey Co., 194 U. S. 324, 328, 24 Sup. Ct. 665, 48 L. Ed. 997, and it is unnecessary to recite them here.

[1, 2] The question recurs: Was the proceeding which has been described, and upon which this judgment of criminal contempt is based, "instituted and tried as for criminal contempt?" The Supreme Court noticed and specified these indications that the contempt proceeding in Gompers Case was not so instituted and tried: (1) That there was nothing in the record indicating that the court or the government was on one side of the contempt proceedings and the defendants on the other. There is nothing in the case in hand so indicating. (2) That the contempt proceedings were instituted, entitled, and tried as a part of the original suit in equity. So was the contempt proceeding in this case. The referee's certificate of contempt, the petition to the District Court for the order to show cause, and the order of the court adjudging Wakefield in contempt were entitled: "In the Matter of Butler-Williams-Wakefield Motor Company, a Copartnership Composed of E. M. Butler, R. L. Williams, and S. L. Wakefield, and E. M. Butler, R. L. Williams, and S. L. Wakefield, Individuals, Bankrupts. In Bankruptcy No. 1712." (3) That the Bucks Stove & Range Company, through its counsel, conducted the proceeding for the adjudication of contempt, not as a representative of the United States or of the court, but for itself, and its counsel, in its name, filed briefs and made arguments for affirmance of the judgment of contempt in the appellate court. This is equally true of the trustee in bankruptcy and his counsel in this contempt proceeding again Wakefield. (4) That the complainant made the defendants witnesses for itself, "a thing that most likely would not have been done, or suffered, if either party had regarded this as a proceeding at law for criminal contempt." 221 U. S. 448, 31 Sup. Ct. 500, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874. The trustee in this case not only introduced and examined Wakefield as his witness, but also by agreement introduced prior testi-

mony which he had given on an examination in the main equity cause under section 7 (9) of the Bankruptcy Law, which expressly provides that no such testimony given by him shall be offered against him in any criminal proceeding. And if this was a proceeding to punish Wakefield for a criminal contempt it was a criminal proceeding. Boyd v. The United States, 116 U. S. 616, 633, 634, 6 Sup. Ct. 524, 29 L. Ed. 746; Counselman v. Hitchcock, 142 U. S. 547, 562, 563, 12 Sup. Ct. 195, 35 L. Ed. 1110; In re Nickell, 47 Kan. 734, 737, 28 Pac. 1076, 27 Am. St. Rep. 315; Ex parte Gould, 99 Cal. 360, 362, 33 Pac. 1112, 21 L. R. A. 751, 37 Am. St. Rep. 57; section 29, Bankruptcy Act. (5) That oral and written testimony not given before the trial judge was introduced and the severity and character of the sentence indicated that the trial judge was largely influenced thereby. 221 U. S. 446. In this case against Wakefield all the evidence upon which the trial judge convicted him was certified to him by the referee or the clerk and the testimony so certified was that of Wakefield introduced and given before the referee on the call and as the witness of the trustee. This witness was not called, nor was any of his evidence given in the presence of or before the trial judge who convicted and sentenced him.

In view of the decision and opinion of the Supreme Court in Gompers' Case, there is no rational way of escape from the conclusion that the judgment of the criminal contempt and punishment against Wakefield in this case cannot be sustained because the charge against him was not tried as for a criminal contempt, but as a civil suit or proceeding in the main equity cause, in which the familiar rules for the trial of a criminal offense were disregarded. Mitchell v. Dexter, 244 Fed. 926, 929, 936, 157 C. C. A. 276; In re Kahn, 204 Fed. 581, 582, 123 C. C. A. 107. An illustration of the trial of a charge as a criminal contempt is disclosed in Stewart v. United States, 236 Fed. 838, 840, 841, 842, 150 C. C. A. 100.

This conclusion has not been reached in this case without a thoughtful reading of the opinion in Re Mardenfeld (D. C.) 256 Fed. 920, upon which counsel for the trustee place reliance; but the order which the opinion in that case states would first be made, was not an order or judgment for a criminal but for a civil contempt. It left the keys of the defendant's prison in his own hands, and the opinion fails to disclose any such similarity in the proceedings in that case and in this as to make that opinion either authoritative or persuasive here. Nor has the court failed to notice and consider the fact that the trustee in his petitions alleged that it would be useless to order Wakefield to turn over the $3,300 or the proceeds of the automobile, because he had testified that he had no way to restore or pay over either of them or the fact that the only prayer of his second petition was that Wakefield be punished for contempt, and that he did not pray, as did the Buck's Stove & Range Company, for such other and further relief as the nature of his case might require. But these facts are far from sufficient to overcome the conclusive indications which have been recited that the charge of contempt of court in this case was not tried as for a criminal contempt, but as for a civil suit or proceeding.

**[3]** It is also assigned as error that the referee overruled the demurrer of Wakefield to the petition of the trustee for an order upon him to show cause why the referee should not issue his certificate of Wakefield's contempt of court pursuant to section 41 of the Bankruptcy Law (Comp. St. § 9625). The jurisdiction of the referee to issue such a certificate is granted and limited by that section, which provides that the referee may make the certificate "if any person shall do any of the things forbidden in this section." Obviously he has no jurisdiction to issue it, if any person shall do anything not forbidden by that section. The things so forbidden are stated in these words:

"A person shall not, in proceedings before a referee, (1) disobey or resist any lawful order, process, or writ; (2) misbehave during a hearing or so near the place thereof as to obstruct the same; (3) neglect to produce, after having been ordered to do so, any pertinent document; or (4) refuse to appear after having been subpœnaed, or, upon appearing, refuse to take the oath as a witness, or after having taken the oath refuse to be examined according to law."

The ground of the demurrer was that the petition did not set forth facts sufficient to warrant the issuance of the certificate of contempt. It did not set forth any lawful order, process, or writ, which it alleged that Wakefield disobeyed in proceedings before the referee, nor his doing of any of the other things forbidden by section 41. Nor did it allege any criminal act or acts with such clearness and certainty as to advise the accused of the charge which he had to meet and to give him a fair opportunity to prepare his defense, so particularly as to enable him to avail himself of a conviction or an acquittal in defense of another prosecution for the same offense, or so clearly that the court could be able to determine whether or not the facts there stated were sufficient to support a conviction. Ledbetter v. United States, 170 U. S. 606, 609, 613, 18 Sup. Ct. 774, 42 L. Ed. 1162; United States v. Britton, 107 U. S. 655, 659, 670, 2 Sup. Ct. 512, 27 L. Ed. 520; Armour Packing Co. v. United States, 153 Fed. 1, 17, 82 C. C. A. 135, 14 L. R. A. (N. S.) 400. The demurrer should not have been overruled.

Not only this, but it is difficult to perceive what part such a petition for a certificate for contempt, the taking by the referee of the testimony of the defendant thereunder, the certificate of that testimony and of the contempt could lawfully play in a "proceeding instituted and tried as for a criminal contempt," which counsel for the trustee insist this was, in which the legal presumption is that the defendant is innocent until he is proved beyond a reasonable doubt to be guilty. And yet it was upon this proceeding for the referee's certificate of contempt, upon evidence before the referee in that proceeding, and upon the referee's certificate of the contempt that Wakefield was convicted and sentenced.

Let the judgment below be reversed, and let the case be remanded to the District Court, with directions to dismiss the entire proceeding, with costs.