### In re HALEY.

### No. 14092.

District Court, S. D. California, Central Division.

May 24, 1930.

W. H. Irons, of Los Angeles, Cal., for bankrupt.

McCORMICK, District Judge.

By a certificate of a referee in bankruptcy, it is represented that, in a bankruptcy matter referred to him for administration, one George W. Haley, the bankrupt therein, has committed a contempt of this court and of its process, and, after a finding to that effect, the referee recommends that his finding be confirmed by the court and that Haley be punished for contempt of court.

The matter was set for hearing after notice to Haley, who appeared with counsel and filed a motion to dismiss the contempt proceedings and also filed an answer to the certificate of the referee.

Without reciting the findings set out in the certificate, the substance of them is that Haley has filed four voluntary petitions in bankruptcy in this court in the period from 1921 to December 26, 1929; that at no time has he paid the referee's indemnity according to law; that each time when he filed said voluntary petition in bankruptcy he had pending against him in the state courts certain actions for the recovery of debt, and that his purpose in filing such successive voluntary petitions in bankruptcy was to obtain the benefits of the National Bankruptcy Act (11 USCA), and that in each instance he obtained the benefits of said acts with respect to immunity under section 11 thereof (11 USCA § 29) for the period as therein prescribed; that Haley did not file any of such petitions in good faith with intent to carry such bankruptcies to a conclusion; that, at the time of filing the petition of December 26, 1929, he pretended and claimed to be entitled to file the same as a pauper without the payment of, or indemnity for, any costs, and that at such time he was not a pauper, but, on the contrary, at all times Haley, during the aforesaid period, was regularly employed and in receipt of a substantial salary.

There are other specifications of irregularity referred to in the certificate upon which findings were made by the referee as incorporated therein, but, inasmuch as all of the findings set forth in the certificate are based upon the same procedure, it is considered unnecessary to set them out in any further detail.

It appeared at the hearing that the referee had issued a subpœna requiring Haley to appear before him. The appearance required was not at a first meeting of creditors, but was in a summary proceeding instituted by the referee for the purpose of making inquiry of the bankrupt as to the regularity of the proceeding then pending before him, and of the prior proceedings in bankruptcy instituted by Haley. It appears that the referee called Haley to the stand, and, after swearing him, proceeded to interrogate him as to his business, earnings, debts, and activities in the matter of his various bankruptcy proceedings. Haley answered such questions as were asked him, and no further or additional testimony or records were presented or introduced before the referee. It therefore appears that solely upon the testimony of the bankrupt the referee made his findings of irregularities and of contempt by Haley and based his recommendations to the court that Haley be punished as for a contempt of the Court and of its process.

Section 41 of the Bankruptcy Act (11 USCA § 69) reads as follows:

"(a) A person shall not, in proceedings before a referee, (1) disobey or resist any lawful order, process, or writ; (2) misbehave during a hearing or so near the place thereof as to obstruct the same; (3) neglect to produce, after having been ordered to do so, any pertinent document; or (4) refuse to appear after having been subpœnaed, or, upon appearing, refuse to take the oath as a witness, or, after having taken the oath, refuse to be examined according to law. No person shall be required to attend as a witness before a referee at a place outside of the State of his residence, and more than one hundred miles from such place of residence, and only in case his lawful mileage and fee

for one day's attendance, shall be first paid or tendered to him.

"(b) The referee shall certify the facts to the judge, if any person shall do any of the things forbidden in this section. The judge shall thereupon, in a summary manner, hear the evidence as to the acts complained of, and, if it is such as to warrant him in so doing, punish such person in the same manner and to the same extent as for a contempt committed before the court of bankruptcy, or commit such person upon the same conditions as if the doing of the forbidden act had occurred with reference to the process of, or in the presence of, the court."

If the aforesaid statute is to be strictly construed, and, being penal in its nature, it probably should be so construed, it is doubtful whether any of the findings in the referee's certificate bring the acts of Haley within the statute. There is nothing that directly supports a conclusion that Haley disobeyed or resisted any lawful order, process, or writ or that he misbehaved during or in close proximity thereto so as to obstruct the same, or that he neglected to produce, after having been ordered to do so, any pertinent document, or that he refused to appear after having been subpœnaed or upon appearing, refused to take the oath as a witness, or, after having taken the oath, refused to be examined according to law.

It may be that a liberal construction of subsection (1) of subdivision (a) of the section would bring Haley's acts, as set out in the referee's findings, within the purview of section 41. The purposes of this statute are to prevent an abuse of the process of the court and to enforce the court's authority, and one who recurrently files voluntary petitions in bankruptcy proceedings as a pauper, when in fact, he is not within such class, or one who successively files voluntary petitions in bankruptcy for the sole purpose of defeating just claims of creditors, and who, upon obtaining the immunity under section 11 of the act, in bad faith, and without any lawful or honest motive, and without taking any further or other steps to comply with the Bankruptcy Act, is probably to be classified as one who is resisting the lawful process of the court.

The important question in this matter, however, is not whether Haley has committed acts of a contumacious or contemptuous character under section 41, but whether this has been lawfully established in such manner as to justify punishment under the Bankruptcy Act.

Clause (9) of subdivision (a) of section 7 of the act (11 USCA § 25(9), provides that the bankrupt shall, "when present at the first meeting of his creditors, and at such other times as the court shall order, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate; but no testimony given by him shall be offered in evidence against him in any criminal proceeding."

In Wakefield v. Housel, 288 F. 712 (8 C. C. A.), it is held that a proceeding to punish for criminal contempt is a criminal proceeding within the meaning of section 7, subd. a, clause (9) of the Bankruptcy Act. It appears to be settled that a contempt of the kind under consideration is a criminal and not a civil contempt (Gompers v. Buck's Stove, etc. Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874; In re Kahn et al. [C. C. A.] 204 F. 581), and that, being a criminal contempt, the accused is entitled to the protection of the constitutional provision against self-incrimination (Gompers v. Buck's Stove, etc., Co., supra). Moreover, not only is Haley thus protected, but by the express terms of the statute (clause (9) of subdivision a of section 7 of the Bankruptcy Act) no testimony such as given by Haley in the proceeding before the referee can be considered for any purpose in a criminal contempt proceeding against him.

The sole basis for the referee's certificate of contempt herein was the disclosures made by the bankrupt in his testimony while upon the stand before the referee under the aforesaid subpœna. There has not been called to the attention of the court any other or further record or evidence upon which the referee assumed to make his findings that Haley had committed contempt of court, and an independent investigation of the files of this proceeding sent up by the referee fails to disclose any further or other evidence upon which the referee based his findings and certificate.

But it is contended that, notwithstanding the aforesaid, this court now possesses such inherent power over its proceedings and processes so as to enable it to take evidence aliunde, and to ascertain from such other evidence as to whether the referee's recommendation that Haley had committed contempt of court and should be punished therefor is not legally established.

Assuming that this court has the right to so inquire, such inquiry places us in no different or better situation than if Haley's conduct is to be determined by what occurred before the referee under his subpœna. I have examined the files in the respective voluntary petitions in bankruptcy proceedings filed by Haley, and without the aid of Haley's testimony it is impossible to find that his representations as to being a pauper at the times of filing the petitions were untrue. There is nothing in the record or schedules that shows that he was not a pauper at the respective times of filing the petitions and having himself adjudicated a bankrupt. There is nothing in the record that justifies a finding that he was not in good faith in the respective voluntary bankruptcy proceedings. The most that the record without the aid of his testimony shows is that there was a suspicion by way of inference that his conduct in filing successive voluntary petitions was not in good faith. This in my judgment is not sufficient upon which to base a finding of contempt of court so as to justify punishment of the offender, so that, regardless of whether this court has the inherent power to inquire into Haley's conduct so as to determine whether he is guilty of a contempt of court, there is no way in which such matter can be determined under the present state of the record without recourse to the testimony of the bankrupt himself.

It follows from the foregoing that the bankrupt, Haley, cannot be found guilty and punished as for contempt of court under the certificate of the referee herein or under the present state of the record herein, and the referee's certificate of contempt is accordingly dismissed, and the bankrupt, Haley, found not guilty of contempt of court.