652

Hiram E. Casey and Chas. W. Fourl, both of Los Angeles, Cal., for appellants.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an order adjudging Katie M. Eustace and Charles W. Fourl guilty of contempt of court and fining each of them $1,000. In the statement of facts which follows we will not undertake for the moment to distinguish between facts which appellants offered to prove and those which otherwise appeared in the record:

John M. Eustace was engaged in the plumbing business at three separate places under the fictitious name of Eustace Plumbing Company. This name had been filed with the county clerk after due notice, as required by law, and the information therein contained was accessible to the public. He had owned a plumbing business for many years before his marriage, in all about 30 years. Katie M. Eustace is his wife and they were living together at the time of the occurrences herein stated. The California law covering the ownership of such property is well settled but difficult of application, and may be briefly stated at this juncture to clarify what follows. In so far as the business and property used therein could be traced as the rents, issues, and profits thereof, it was the separate property of the husband. Cal.Civ. Code, § 163. In so far as the property was the result of the earnings of the husband or the wife after marriage, it was the community property. Cal.Civ.Code, § 164. It was under his exclusive management and control whether his separate or community property. Cal.Civ.Code, §§ 172, 172a. Neither the separate property of the husband nor the community property was liable for the debts of the wife. Cal.Civ. Code, § 167. We again state these general principles of the California law applying to community and separate property as formulated by the authority of California Jurisprudence:

5 Cal.Jur. p. 282, § 7: "Community Property. * * * In general, under this system, whatever is acquired by the efforts, ability or personal qualities of either spouse, constitutes a part of the community property. Thus, the earnings of the wife as well as of the husband are community property, and this includes gains from business ventures conducted by either, and from contracts for services of whatever nature; and money borrowed on personal credit."

Supplement of 1930, p. 50, § 33, Cal. Jur. by Prof. Orrin K. McMurray: "In General. Difficult questions occur in connection with the commingling of separate and community funds including the application of labor and skill of the spouses, and it cannot be said that the rules governing the rights of the parties have been clearly determined in such cases. The commingling of community and separate funds in such a manner that it becomes impossible to trace the funds renders the whole fund community property. It is clear that the increase in the value of the separate property due to the natural enhancement of values generally, and not attributable to the ability, activity or capacity of the spouses or either of them, is separate property."

5 Cal.Jur. p. 297, § 16: "Impossibility of Tracing Funds. Where the commingling of the separate property with the community property is such that it is impossible to trace the funds, the whole will be treated as community property, upon

the principle that the burden is upon the spouse claiming property as separate property to establish its character as such."

It follows that the plumbing store and the supplies therein were either community property and that the possession of the wife was as a member of the community, or that the supplies were the separate property of the husband, and she was in possession as his agent. Mrs. Eustace had engaged in some oil production enterprise, and as result thereof three judgments had been obtained against her in the superior court of Los Angeles county, Cal.; one for $6,284.02, another for $650, and a third by one A. M. Kupfer for $49.95.

On August 23, 1934, the three judgment creditors filed an involuntary petition in bankruptcy against Mrs. Eustace alleging as acts of bankruptcy the fact that she had permitted one of the petitioning creditors, the Oil Tool Exchange, Inc., to obtain a judgment lien on real estate belonging to her on April 24, 1934, and had failed for 30 days thereafter to vacate or discharge the lien. It is also alleged that within four months preceding August 23d Mrs. Eustace had transferred to Charles W. Fourl and I. Henry Harris an oil and gas leasehold in the Baldwin Hills, Los Angeles, and that within four months, with intent to injure her creditors, she had transferred to one G. Dibetta certain real estate situate at Huntington Beach, Orange county, Cal. It is alleged in the petition that Mrs. Eustace was engaged in the plumbing business at 1246 East Ninth street, in the city of Los Angeles. The petition was entitled: "In the Matter of Katie M. Eustace, doing business under the name of Eustace Plumbing Company, an alleged bankrupt."

Before adjudication of bankruptcy on September 7th a petition for the appointment of a receiver was filed in the above-entitled matter, verified by A. M. Kupfer, whose judgment claim amounted to $49.95. It was alleged in the petition that it was absolutely necessary for the preservation of the estate that a receiver be appointed for the reason that Mrs. Eustace had been for a long time engaged in the plumbing business under the name of the Eustace Plumbing Company; that she had been the manager and operator of the business; that she had stored a large amount of miscellaneous plumbing supplies, fittings, etc., at 1246 East Ninth street, also at 166½ North La Brea and 828–830 Ceres avenue, Los Angeles, and that she planned and intended

to dispose of and conceal such stock of plumbing supplies so as to defeat her creditors, and that she had been concealing real estate and personal property in the name of dummies; that it was for the best interests of the estate that a receiver, if appointed, be authorized to continue the business of the bankrupt until the appointment of a trustee "for the reason that said business would be of great value to the creditors as a going concern." On the same day an ex parte order was made appointing E. A. Lynch as receiver. This order did not specifically describe any property whatever. It did not directly or indirectly refer to the plumbing business conducted at the three places of business described in the petition for the appointment of a receiver nor in the place of business described in the petition in bankruptcy. It was ordered that E. A. Lynch be appointed receiver "of all property of whatsoever nature and wheresoever located now owned by or in the possession of said bankrupt," etc. It was ordered that all persons, etc., including the bankrupt, forthwith deliver to the receiver all property in the "possession of them or any of them and owned by said bankrupt," and that the bankrupt forthwith deliver to the receiver "all and any of such property now in the possession of said bankrupt." All persons were enjoined from disposing of any property in the possession of the bankrupt or owned by said bankrupt. The order authorized the receiver to conduct the business and sell the same as a going concern "if it can be done to the benefit of said estate."

On September 10th the receiver visited the premises at 1246 East Ninth street and attempted to take possession thereof and was ejected therefrom by appellant Charles W. Fourl; on September 11th the receiver filed a petition for an order to show cause directing each of the appellants to show cause "why they should not be held in contempt of court for interfering with the possession of the receiver of said premises and why possession of said premises should not be restored forthwith to your receiver." In this petition it is alleged that the receiver, accompanied by J. C. Keenan and W. D. Hunt, visited 1246 East Ninth street and found J. G. Stevenson in charge of the premises; that Stevenson told them he had been working for Mrs. Eustace for about 70 weeks, and that so far as he knew Mrs. Eustace had been conducting the business during that period and was the own-

er thereof; that she had paid his compensation; and that the receiver at that time left with Stevenson "a certified copy of the order of his appointment"; that at about 12 o'clock Mrs. Eustace appeared with the appellant Charles W. Fourl, and Fourl then and there advised the receiver that the premises and business were owned by John M. Eustace and ordered the receiver to quit the premises claiming that he was an interloper and trespasser; that thereupon the receiver communicated with the attorney for the petitioning creditors, Raphael Dechter, and was advised by him that if the bankrupt was in possession of the premises or in control thereof that the receiver had succeeded to such possession and control, and that if anybody else desired to obtain possession of the premises to instruct them to file a petition in court for that purpose; that the receiver transmitted such advice and instructions to Mrs. Eustace and Charles W. Fourl, but that she continuously threatened and ordered the receiver to quit the premises and stated she was going to use all kinds of force to evict the receiver; that while the receiver was in charge of the premises Mrs. Eustace appeared to be in control of the premises; that she stated she would not hesitate to use a gun if necessary to evict the receiver; that she refused to surrender the keys to the locked storeroom in which the records and books of the business were kept; that at about 5:45 p. m. September 10th she called her attorney, Hiram E. Casey, and after talking with him requested the receiver to talk with her attorney; and that he did so and was told by the attorney that the receiver was a trespasser and an interloper and he was going to advise the alleged bankrupt to use all the force necessary to evict him from the premises; that the receiver advised Mr. Casey that he would call his counsel, but was refused permission to use the telephone for that purpose, and that thereafter appellants forcibly and violently evicted the receiver from said premises and forcibly resisted any attempt to reenter the premises.

We have quoted extensively from this petition for the purpose of indicating that it nowhere expressly alleges that Mrs. Eustace was in the possession of the premises at the time the receiver entered. It appears therefrom that Mrs. Eustace arrived later; that the receiver's attempt to take possession was based upon the statement of Mr. J. G. Stevenson, who was in possession, that Mrs. Eustace owned the property; and that the receiver was advised within 15 minutes after his arrival at the premises, that is, at the time Mrs. Eustace first appeared there, that the property belonged to Mr. Eustace and not to Mrs. Eustace. In pursuance of the petition for the order to show cause, such an order was issued on September 11th directing the appellants to show cause at 2 o'clock September 12, 1934, why they should not be declared in contempt for interfering with the possession of the receiver of the premises at 1246 East Ninth street and why an order should not be made restoring possession forthwith to the receiver. At the time fixed for the return of the order to show cause, Mrs. Eustace appeared in court with her attorney. Over the protest of appellants the court proceeded forthwith with the hearing. The receiver testified that Mr. Stevenson, whom he found working on the premises at 1246 East Ninth street, stated that he was in charge of the premises. He thereupon proceeded, over the objection and exception of Mrs. Eustace that the testimony was hearsay and incompetent, to state that Stevenson had stated to him that so far as he knew Mrs. Eustace was the owner of the premises. He testified that he thereupon handed to Mr. Stevenson a certified copy of the order appointing him receiver. He testified in accordance with the allegations of his petition that Mr. Fourl and Mrs. Eustace came to the premises about 12:30; that he handed her a copy of the order appointing him receiver and announced, "I am the receiver and in possession," whereupon Mr. Fourl replied, "You have no possession here. This is the property of my client, John Eustace," to which the receiver replied, "I have information that leads me to think otherwise, and I am going to remain in possession." Without detailing the entire conversation and conduct of the parties, we add that the receiver testified that Mrs. Eustace stated to him that she would not hesitate to shoot a man like Mr. Dechter, the attorney for the petitioning creditors, and would not consider that she had committed murder in so doing. The parties all remained in the premises until about 10 minutes past 5 o'clock, when the receiver stated to Mr. Fourl, "Well, Mr. Fourl, I am in possession, and you will have to put me out." Pursuant to this invitation the receiver was ejected from the premises. The receiver also testified on his cross-examination that

on the morning of September 12th he had met Mrs. Eustace's attorney, Mr. Casey, and had told him he was about to crash Katie M. Eustace in bankruptcy, and that Mr. Casey then told him if he were appointed receiver in the matter "not to bother with the plumbing business on East 9th Street because that belongs to John M. Eustace and that Katie M. Eustace had no interest in it," and that he replied he had reason to believe to the contrary; that Casey then told him that among the records at the county clerk's office was a certificate of doing business under a fictitious name in compliance with the laws of the state of California.

J. G. Stevenson was called by the receiver as a witness upon the hearing, and testified that he had been in the employ of John M. Eustace for the past seven or eight years, that he was originally hired by Mr. Eustace personally, and that about two years before the hearing he had been hired by Mrs. Eustace; that he had seen Mrs. Eustace around the premises nearly every day and had been taking instructions from her; that his pay check was sometimes signed by Mr. Griffith and sometimes his salary was handed to him in cash by Mrs. Eustace, and sometimes he paid himself from money on hand in the business; that he thought that when Mr. Lynch appeared on the premises he was a prospective customer and treated him accordingly; that when he was asked if Mrs. Eustace owned the business he stated that she did, but if he had been asked if John M. Eustace owned the business he would have answered "yes," but that he did not know of his own knowledge who owned the business.

Mrs. Eustace was called to the witness stand by the petitioner. She was questioned at length in reference to the method of handling the business at 1246 East Ninth street and testified the moneys derived therefrom were deposited in the name of J. A. Griffith who was the bookkeeper for appellant Fourl, and that the moneys paid out on account of the business were paid out through checks of Mr. Griffith. She testified that her husband had been away from the plumbing business a greater part of the time for two years, and that she and her son had been managing the business during that time. Thereupon the court instructed the receiver to take possession of the property and directed Mrs. Eustace to turn over the key to the premises. She turned over a key. Mr. Griffith

was instructed to turn over the books of the business to the receiver. The matter was then continued until the termination of the hearing of the petition for contempt against Charles W. Fourl, who had not yet been served with the order to show cause. The next day, September 13th, an order was entered adjudging Mrs. Eustace guilty of contempt of court and directing that the premises at 1246 East Ninth street be restored to the possession of the receiver.

It will be observed that this order of September 13th was entered before the hearing had been completed as to Mrs. Eustace according to the terms of the adjournment on September 12th. On September 21st the receiver's petition of September 11th came on for hearing as to appellant Fourl. Appellant Fourl objected to the jurisdiction of the court, filed a motion to dismiss, which was denied, and thereupon filed an answer. The judge announced that he would not consider the question of title to the premises at 1246 East Ninth street. This ruling was repeated a number of times during the trial. To the offer of the appellants to show that the plumbing business belonged to the husband, and that the wife had no interest therein, it was objected by the receiver that the only issues before the court were: "Who was in possession or control of the premises on East 9th Street on the day the receiver went down there and what, if any, force or steps, were taken to evict the receiver from said premises after he had secured peaceful possession of them." The court stated, "that is the view, of course, that the court expressed and that is the ruling. Objection sustained." The appellant Fourl testified in his defense that he told the receiver at 1246 East Ninth street on September 10th that the "court never authorized you or anybody else to take possession of the property other than the property of the bankrupt, or alleged bankrupt, in this case, Katie M. Eustace"; that he advised the receiver he was representing John M. Eustace, and that he had in fact been employed by him.

At the conclusion of the hearing of the proceedings against appellant Fourl he was adjudged in contempt, fined $1,000, and committed to the custody of the United States Marshal until the fine was paid. Mrs. Eustace was also fined the same amount. It appears from the record that there was another contempt citation directed to Mrs. Eustace "for not having delivered the proper means of access to the

premises after being so directed to do by the court in open court."

At the conclusion of the hearing on September 22d against appellant Fourl, Mrs. Eustace moved that the order of September 13th adjudging her in contempt be vacated, and offered to stipulate in that event that all the evidence taken in the hearing with reference to appellant Fourl should be considered in her contempt proceeding. This stipulation was accepted and the order of September 13th vacated, whereupon the whole matter was submitted for decision. The citation on appeal in this case was served on the receiver and the "statement of the case" on which the appeal is taken was settled upon stipulation of counsel for the receiver and the attorneys for appellants. The United States Attorney did not participate in the proceedings in any way and was not notified of the appeal.

█ We are satisfied, notwithstanding some indications in the record to the contrary, that the contempt proceeding was inaugurated, tried, and determined as a civil contempt, and that the imposition of a fine which bore no relation to the injury suffered by the receiver was unauthorized. Gompers v. Buck's Stove, etc., Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A. (N.S.) 874; In re Guzzardi (C.C.A.) 74 F.(2d) 671; In re Kahn (C.C.A.) 204 F. 581; Wakefield v. Housel (C.C.A.) 288 F. 712.

It should be added that if the proceeding in the federal court is to be considered as a trial of a criminal contempt the rulings of the court rejecting the evidence offered by the appellants as to title and good faith were erroneous. Chief Justice Taft, speaking for the Supreme Court of the United States, in Cooke v. U. S., 267 U.S. 517, 45 S.Ct. 390, 395, 69 L.Ed. 767, said: "In cases like this, where the intention with which acts of contempt have been committed must necessarily and properly have an important bearing on the degree of guilt and the penalty which should be imposed, the court cannot exclude evidence in mitigation. It is a proper part of the defense."

█ The appellee has made no appearance and filed no brief. It appears that the bankruptcy proceeding in which this matter originated has been dismissed. The civil contempt proceeding being ancillary to the bankruptcy proceeding also should be dismissed. Gompers v. Buck's Stove,

etc., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.(N.S.) 874; Michaelson v. U. S., 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162, 35 A.L.R. 451; Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419; Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389. Inasmuch as the conduct of an attorney at law is involved, we add that we see nothing in the record to justify the conclusion that attorney Fourl was acting otherwise than in good faith. It certainly was not an unreasonable contention on his part that where the order appointing the receiver also directed him to seize and sell property that it could only have been intended by the court to include in such an order such property as was owned by the bankrupt over which alone the bankruptcy court had jurisdiction. Mrs. Eustace, of course, knew the facts with relation to the ownership of the plumbing business. She also knew that her husband's attorney, Mr. Fourl, was fully cognizant of the facts and she was advised by him and also by Mr. Casey, her own attorney, that the receiver had no right to take possession. While the advice of an attorney is not a defense to an act of contempt, it is a matter to be considered in mitigation in a trial for criminal contempt.

Judgment reversed, with instructions to dismiss the proceeding.

